## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

|  |  |  |
|---|---|---|
| LAURA BURROUGHS, Individually and as Executrix of the Estate of JACK E. BURROUGHS, deceased; HEATHER SINCLAIR, Individually, as Representative of the Estate of BLAKE G. SINCLAIR, deceased, and as Next Friend of K.S., a minor; ALEX SINCLAIR; TAYLOR SINCLAIR; and BRITTANY PHILLIPS, | § § § § § § § § § § § | |
| Plaintiffs, | § § | Case No. 6:23-cv-158-JDK |
| v. | § § § | |
| AFFORDABLE CARE, LLC, F/K/A AFFORDABLE CARE, INC.; AFFORDABLE CARE, LLC, D/B/A AFFORDABLE DENTURES-TYLER, | § § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER
## GRANTING MOTION TO DISMISS

In this wrongful death case, Plaintiffs allege that Defendant Affordable Care, LLC, failed to protect Dr. Jack Burroughs and Dr. Blake Sinclair from a patient who shot and killed them at Affordable Care's clinic in Tyler, Texas.  The Court dismissed Plaintiffs' original complaint because it failed to allege that Affordable Care owed the dentists a duty to protect them from the criminal acts of a third party, as required by Texas law.  Docket No. 27.

Plaintiffs then filed an amended complaint with new allegations to show that Affordable Care "knew of an unreasonable and foreseeable risk of harm to the

1

Decedents and Plaintiffs" and yet took no action "to reduce or eliminate that risk." Docket No. 33 ¶¶ 17–42.   Affordable Care now moves to dismiss the amended complaint, arguing that the new allegations are insufficient, Plaintiffs have still not alleged a duty, and thus the amended complaint fails to state a claim.   Docket No. 34.

As explained below, the Court grants the motion and dismisses the action under Federal Rule of Civil Procedure 12(b)(6).

## I.

The following facts are taken from Plaintiffs' amended complaint.   *Raj v. La. State Univ.*, 714 F.3d 322, 330 (5th Cir. 2013) (holding that the Court must accept "all well-pleaded facts in the complaint as true and viewed in the light most favorable to the plaintiff" when ruling on a motion to dismiss under Rule 12(b)(6)).

On March 16, 2022, disgruntled patient Steven Alexander Smith shot and killed Dr. Jack Burroughs and Dr. Blake Sinclair inside their practice at Affordable Dentures & Implants in Tyler.   Docket No. 33 ¶ 18.   Earlier in the day, Smith and clinic staff "had a dispute over [Smith's] dental care," which "compelled employees to cease treatment and ask that he leave after exhibiting aggressive and threatening behavior."   *Id*. ¶ 34.   Smith then "retrieved a handgun from his truck parked outside and returned to the clinic door while staff tried to lock him out."   *Id*. ¶ 37.   Smith "burst in, knocking Dr. Burroughs to the ground as Dr. Sinclair attempted to wrest the weapon out of Smith's hand."   *Id*.   Dr. Burroughs' and Dr. Sinclair's "brave acts were to no avail as Smith discharged numerous bullets into the helpless men."   *Id*. Smith was indicted for capital murder and aggravated assault.   *Id*.

Plaintiffs claim that Smith's act of violence was "preventable." *Id.* ¶ 16. According to Plaintiffs, Affordable Care "was aware and knew that the dental industry in general and the low-cost denture industry in particular carried with its very nature a high risk of crime." *Id.* ¶ 17. For example, Plaintiffs point to the OSHA *Guidelines for Preventing Work Place Violence for Health Care Workers* and the American Dental Association's recommendation that dental practices follow the OSHA Guidelines. *Id.* Plaintiffs allege that Affordable Care did not adequately comply with these standards because it lacked an adequate safety plan. *Id.* Plaintiffs also contend that Affordable Care markets itself "towards the working class as a business centered on the extraction of teeth and 'affordable' dentures." *Id.* ¶ 31. According to Plaintiffs, Affordable Care "created a breeding ground for potential disruption and violence" given that its patients had "little funds to spare" and "were dealing with major dental issues." *Id.* Plaintiffs also allege that Affordable Care "received dozens of reports of actual or threatened gun violence, physical violence, and knife violence at Affordable facilities." *Id.* ¶ 20.

Further, Affordable Care knew of an unreasonable and foreseeable risk of harm to Dr. Burroughs and Dr. Sinclair at the Tyler clinic in particular because of "a long list of prior incidents and complaints which were close in both proximity and time to the subject incident." *Id.* ¶ 18. In addition to this general allegation, Plaintiffs include six specific incidents of which Affordable Care was allegedly aware:

- March 8, 2022 – Affordable Care received reports that Smith "was making aggressive complaints regarding his treatment at the Affordable facility in Tyler that drew the concern of Dr. Burroughs." *Id.* ¶ 21. Plaintiffs further allege that Smith had "previously and consistently asserted aggressive

3

complaints and verbal threats against Affordable Care staff and Affordable was aware of such incidents." *Id.*

- December 8, 2021 – An unnamed patient at the clinic "was screaming at staff and threatening violence." *Id.* ¶ 22. "This patient had exhibited these actions on multiple prior occasions." *Id.* "The patient had to be escorted out of the facility and the doors were locked." *Id.*

- November 15, 2021 – "[T]he Smith County Sheriff's Office responded to Affordable Care's Tyler facility based on reports of criminal trespass." *Id.* ¶ 23. According to the Sheriff's report, an unnamed patient threatened Affordable Care staff, cursed at them while beating on the clinic door, and said that she was "packing a gun" and would "be going to jail" if she did not get her dentures. *Id.*

- July 15, 2021 – "[A] patient was verbally threatening physical violence and cursing out the staff at the facility in Tyler." *Id.* ¶ 24.

- March 26, 2021 – "[A] patient was verbally threatening physical violence and cursing out staff at the Affordable facility in Tyler." *Id.* ¶ 25.

- August 4, 2020 – The Smith County Sheriff's Office responded to the Affordable Care clinic after a patient with recent weapons charges threatened violence. *Id.* ¶ 26.

Plaintiffs also allege that Affordable Care installed a "panic button . . . due to its knowledge of aggressive and threatening patients and the escalation of potential violence." *Id.* ¶ 27. "The panic button was linked directly to the Smith County Sheriff's Office and had been used twice in the year prior to the incident" involving Smith and Dr. Burroughs and Dr. Sinclair. *Id.* According to Plaintiffs, Affordable Care knew that the panic button was not operational on the date of the incident but took no action to remedy it. *Id.*

Plaintiffs further allege that, "[i]n the months and years" preceding Smith's violence, Affordable Care received reports of threats and aggressive behavior related to the Tyler clinic:

4

- An Affordable Care employee "often reported belligerent and cursing patients making racist remarks requiring staff to call the Police Department's non-emergency number for assistance each time." *Id.* ¶ 28. The employee told the Operational Manager for Affordable Care that "'something bad will happen to this office' and 'time will come when y'all will need to come down here and intervene.'" *Id.*

- A second employee reported that "in the prior months and year before the subject incident another patient had threatened Dr. Burroughs with a gun and also threatened to beat him up." *Id.* ¶ 29. The same employee also reported that "911 was called multiple times due to threatened patient violence and aggression" and that "she was personally threatened by a patient with a knife." *Id.* ¶¶ 29–30.

Finally, Plaintiffs point to the nature and character of the premises as a factor that made criminal activity foreseeable. *Id.* ¶ 31. Plaintiffs allege that Affordable Care staff reported "being bullied almost daily and patient confrontation occurred often." *Id.* According to Plaintiffs, "Dr. Sinclair often had to come up front and sit with staff members while they were dealing with difficult and extremely aggressive patients." *Id.* Affordable Care staff, Plaintiffs contend, "reported monthly incidents of aggressive patients where the staff believed they might be in physical danger." *Id.* Plaintiffs allege that the area surrounding the Tyler clinic is "crime riddled." For example, "multiple shootings" have occurred at a nearby apartment complex, including one less than two months before Smith's shooting at the clinic. *Id.* ¶ 32. Another apartment complex near the clinic has "elevated crime rates" according to Plaintiffs. *Id.*

As a result, Plaintiffs allege, Affordable Care "knew, or should have known, about the propensity of patients at Affordable facilities to engage in acts of violence or threatened violence." *Id.* ¶ 35. Affordable Care thus owed Dr. Burroughs and Dr. Sinclair—and accordingly, Plaintiffs—a duty to protect them from criminal activity,

and specifically from Smith's deadly shooting.  And Affordable Care breached this duty by not providing adequate security procedures, de-escalation training, other training, or a functioning panic button.  *Id.* ¶ 35.  Plaintiffs assert claims of negligence, premises liability, negligent undertaking, and gross negligence against Affordable Care.  *Id.* ¶¶ 39–56.

Affordable Care now moves to dismiss the amended complaint under Rule 12(b)(6) because, it argues, the new allegations are insufficient to establish that Affordable Care owed Dr. Burroughs and Dr. Sinclair a duty under these circumstances.

## II.

Federal Rule of Civil Procedure 8(a) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  (quoting *Twombly*, 550 U.S. at 556).

A complaint that fails to state a claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6).  Motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and are rarely granted."  *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232

(5th Cir. 2009) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)).  A claim cannot be dismissed under Rule 12(b)(6) unless the plaintiff "would not be entitled to relief under any set of facts or any possible theory that [it] could prove consistent with the allegations in the complaint."  *Muhammad v. Dall. Cty. Cmty. Supervision & Corrs. Dep't*, 479 F.3d 377, 380 (5th Cir. 2007) (citing *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).  As noted above, when ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts "all well-pleaded facts in the complaint as true and viewed in the light most favorable to the plaintiff."  *Raj*, 714 F.3d at 330.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## III.

Affordable Care argues that the amended complaint should be dismissed primarily because it fails to allege a duty:  "Plaintiffs have not pled sufficient facts to establish the risk that a patient would shoot and kill two dentists at the Affordable Dentures & Implants clinic in Tyler on March 16, 2022."  Docket No. 34 ¶ 1.  Because all four claims include duty as an element, Affordable Care argues, the entire complaint should be dismissed.  *See id.*  As explained below, the Court agrees.  Plaintiffs' new allegations, including the allegations of other incidents at or near the clinic, are insufficient to allege a duty under Texas law.[1]

---

[1] Affordable Care also argues that Plaintiffs' negligence claim should be dismissed because it is a restated premises liability claim and that their negligent undertaking claim should be dismissed because it lacks factual support.  Docket No. 34 ¶¶ 41–43 (addressing Plaintiffs' negligence claim); *id.* ¶¶ 44–45 (addressing Plaintiffs' negligent undertaking claim).  Because the Court dismisses all

## A.

As the Court explained in dismissing Plaintiffs' original complaint, "[a]s a general rule, a person has no legal duty to protect another from the criminal acts of a third person or control the conduct of another." *E.g., Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996); *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998). There is an exception, however: "[o]ne who controls . . . premises does have a duty to use ordinary care to protect invitees from criminal acts of third parties if he knows or has reason to know of an unreasonable and foreseeable risk of harm to the invitee." *Timberwalk*, 972 S.W.2d at 756 (quoting *Lefmark Mgmt. Co. v. Old*, 946 S.W.2d 52, 53 (Tex. 1997)); *see also Smit v. SXSW Holdings, Inc.*, 903 F.3d 522, 530 (5th Cir. 2018) (quoting *Timberwalk*, 972 S.W.2d at 756). "Foreseeability requires only that the general danger, not the exact sequence of events that produced the harm, be foreseeable." *Timberwalk*, 972 S.W.2d at 756 (quoting *Walker*, 924 S.W.2d at 377). "When the 'general danger' is the risk of injury from criminal activity, the evidence must reveal 'specific previous crimes on or near the premises' in order to establish foreseeability." *Id.* (quoting *Walker*, 924 S.W.2d at 377). Courts analyze "'whether any criminal conduct previously occurred on or near the property, how recently it occurred, how often it occurred, how similar the conduct was to the conduct on the property, and what publicity was given the occurrences to indicate that the landowner knew or should have known about

---

the claims for failure to allege a duty, it need not address these two arguments.

them'"—also known as "the *Timberwalk* factors." *Smit*, 903 F.3d at 530–31 (quoting *Timberwalk*, 972 S.W.2d at 757).

The Court concluded that Plaintiffs' original complaint failed to allege a foreseeable risk of harm because it included only vague allegations about "prior similar incidents of violence or threatened violence." Docket No. 27 at 9 (quoting Docket No. 3 ¶ 19). Such general, conclusory allegations did not come close to alleging the required proximity, recency, frequency, similarity, and publicity of prior criminal acts. *Id*. at 10 (citing cases). And although the amended complaint includes several specific incidents of other upset, angry patients "threatening violence," *e.g.*, Docket No. 33 at 22, the incidents do not satisfy the *Timberwalk* factors required to establish foreseeability. In fact, Plaintiffs concede as much, arguing that "*Timberwalk* is not the relevant test" and making no effort to explain how the prior incidents satisfy the *Timberwalk* factors and establish foreseeability here. *See* Docket No. 37 at 4; Docket No. 35 at 1; *id*. at 12.

Plaintiffs are correct to concede the point. The alleged prior incidents in the amended complaint are too dissimilar or remote to make Smith's murderous conduct foreseeable here. The six specific incidents involved other patients' making "aggressive complaints," "screaming at the staff," "threatening violence," "threatening the staff," and "verbally threatening physical violence and cursing out the staff." Docket No. 33 ¶¶ 21–26. Some of these incidents are not even criminal, and none comes close to the kind of violent crime that Smith committed here. *See Trammell Crow Cent. Tex., Ltd. v. Gutierrez*, 267 S.W.3d 9, 13 (Tex. 2008) (citing

*Timberwalk*, 972 S.W.2d at 758).  While one instance included a woman claiming to have a gun, the police incident report attached to the complaint states that the woman did not have a gun.  *See* Docket No. 33 ¶ 23, *id.*, Ex. A.  And although Plaintiffs identify at least two instances where patients threatened violence with a deadly weapon, *id.* ¶¶ 29–30, the threats never culminated in actual violence.  *See Trammell Crow*, 267 S.W.3d at 16 (noting the absence of violence and lack of a firing gun in finding that prior crimes did not establish foreseeability of violent crime).  *Timberwalk* requires that "[t]he previous crimes . . . be sufficiently similar to the crime in question as to place the landowner on notice of the *specific danger*."  *See id.* (emphasis added).

The only violent conduct identified by Plaintiffs allegedly occurred at a nearby apartment complex.  "Less than two months prior to the incident, there was a shooting at the Oxford Pointe Apartments, located at 3100 E. St. Hwy 31, Tyler, Texas, 75702, very near the Tyler Affordable clinic on January 23, 2021."  *See* Docket No. 33 ¶ 32; *see id.* ("The Oxford Pointe Apartments have multiple shootings every year.").  But unspecified "shootings" at a nearby apartment complex by unknown assailants do not establish "a repetitive pattern" of violent criminal conduct at the dental clinic.  *See Smit*, 903 F.3d at 532–33 (holding that plaintiffs failed to allege foreseeability because they did not point to a single event similar to the criminal conduct at issue, much less a repetitive pattern of similar incidents); *see also Trammel Crow*, 267 S.W.3d at 17 (holding that a shooting at a shopping mall was not foreseeable because ten previous violent crimes at the property were dissimilar and

infrequent); *Viera v. Little Ceasar Enters.*, 2011 WL 6306653, at *7 (Tex. App.—
Houston [1st Dist.] 2011, no pet.) (mem. op.) (declining to find foreseeability of violent
crime because plaintiffs had identified only one significantly similar event over a four-
year period); *Mayers v. Willowbrooke Plaza Ltd. P'ship,* 278 S.W.3d 901, 918 (Tex.
App.—Houston [14th Dist.] 2009, no pet.) (concluding that violent crime was not
foreseeable because no violent crimes had previously occurred at the premises); *Park
v. Exxon Mobil Corp.*, 429 S.W.3d 142, 148 (Tex. App.—Dallas 2014, pet. denied)
(declining to find foreseeability of gun violence despite five previous crimes at the
property because none involved a shooting and only one involved a gun being
displayed but not fired).

## B.

Acknowledging they cannot satisfy *Timberwalk*, Plaintiffs instead argue that
there is a "second framework for proving foreseeability . . . outlined in *Del Lago
Partners, Inc. v. Smith*, 307 S.W.3d 762 (Tex. 2010)." Docket No. 35 at 4. And,
Plaintiffs claim, they have "plead[ed] a plausible case of foreseeability beyond a mere
speculative level under the *Del Lago* analysis." *Id*. at 1. But *Del Lago* involved a
unique set of facts not present here.[2]

In *Del Lago*, the Texas Supreme Court held that the owner of a bar had a duty
to protect patrons from a bar fight where the owner "had actual and direct knowledge

---

[2] Plaintiffs argue that the Court "cannot [] consider[]" Affordable Care's response to this argument
because Affordable Care "failed to address [*Del Lago*] in [its] Motion to Dismiss." Docket No. 37
at 1–2. But Affordable Care moved to dismiss on the ground that Plaintiffs did not allege a duty,
and Plaintiffs responded by citing and relying upon *Del Lago*. Affordable Care appropriately
addressed that reliance in its reply. Plaintiffs, moreover, had an opportunity to respond in a sur-
reply. *See id*.

that a violent brawl was imminent between drunk, belligerent patrons and had ample time and means to defuse the situation." 307 S.W.3d at 769. The owner's duty "arose not because of prior similar criminal conduct but because it was aware of an unreasonable risk of harm at the bar *that very night*." *Id*. (emphasis added). Indeed, in that case, "the fight occurred in a bar at closing time following ninety minutes of heated altercations among intoxicated patrons." *Id*. at 768. The owner "observed— but did nothing to reduce—an hour and a half of verbal and physical hostility in the bar." *Id*. at 769. Despite "palpable and escalating tension" in the period leading up to the brawl, the owner "continued to serve drunk rivals who were engaged in repeated and aggressive confrontations." *Id*. As the supreme court held, "[t]hat a fight broke out was no surprise" because "everyone could tell serious trouble was brewing" and was "merely a matter of time." *Id*.

Nothing similar is alleged to have happened at the Affordable Care clinic on March 16, 2022. Plaintiffs certainly do not allege that Affordable Care "had actual and direct knowledge" that Smith's murderous rampage that day was "imminent." *See id*. at 769. Regarding March 16, Plaintiffs allege only that, while at the clinic that day, "Smith and clinic staff had a dispute over his dental care that compelled employees to cease treatment and ask that he leave after exhibiting aggressive and threatening behavior." Docket No. 33 ¶ 34. Nothing about this allegation suggests Affordable Care knew that Smith was minutes away from returning to the clinic with a gun and killing Dr. Burroughs and Dr. Sinclair. Plaintiffs do not plead, for example, that Smith threatened to shoot the dentists in this exchange. Nor do they allege that

Smith's violent rampage was "no surprise" or merely "a matter of time," as the fight in *Del Lago*. 307 S.W.3d at 769. Rather, as the amended complaint notes, threatening and aggressive behavior by patients was not unusual at the clinic—but a violent, murderous assault was.

Plaintiffs, moreover, do not allege that Affordable Care, knowing an attack was imminent, took no action to prevent it. In *Del Lago*, employees of the premises owner were present and serving patrons at the property in the hour and a half leading up to the bar fight. *Id.* at 769. And, despite "heated confrontations involv[ing] cursing, name-calling, and hand gestures," "pushing and shoving," and "yelling" by "very intoxicated" bar patrons, the employees did nothing to reduce the hostility. *Id.* at 765, 769. Here, in contrast, Plaintiffs allege that Smith and clinic staff "had a dispute over his dental care" and that staff then stopped Smith's treatment and "ask[ed] that he leave," which he did. Docket No. 33 ¶ 34. In these circumstances, the Court cannot conclude that Smith's violent conduct plausibly was "a natural and predictable progression from the conduct that preceded it." *See, e.g., QuikTrip Corp. v. Goodwin*, 449 S.W.3d 665, 673 (Tex. App.—Dallas 2014, pet. denied) (citing *Del Lago*, 307 S.W.3d at 768) (finding that the premises owner did not have knowledge of imminent criminal conduct because the immediately preceding conduct was not predictive of criminal conduct and the nature and character of a convenience store were not associated with violent crimes).

Further, the complaint alleges that, once Smith left the clinic following the dispute with staff, he went to his truck parked outside, retrieved a gun, and then

returned to the clinic.  *See* Docket No. 33 ¶¶ 34, 37.  "Even if the assailant had announced an intent to commit an assault at some point during the three minutes in question, the short timeframe meant that Defendant had no meaningful opportunity to reduce the risk to Plaintiff."  *See Mesina v. Walgreen's*, 2015 WL 6438914, at *3 (W.D. Tex. Oct. 21, 2015) (declining to find a duty under *Del Lago* because of "the extremely short timeframe between the assailant's first entrance and his final exit from the store" "even if the assailant had been acting in an aggressive manner or indicated that an assault was or may have been imminent.").

Plaintiffs argue that the incidents preceding the shooting at the Tyler clinic, in the apartment complex near the clinic, and at other Affordable Care clinics across the country are "immediately preceding conduct" under *Del Lago*.  Docket No. 35 at 11.  But those events occurred months, sometimes years, before Smith's shooting. They are not "immediately preceding" in the way the escalating bar brawl immediately preceded the injury to the plaintiff in *Del Lago*.  *See ALNA Props. II, LLC v. Cobb*, 2023 WL 5740182, at *5 (Tex. App.—Dallas Sept. 1, 2023, pet. denied) (declining to "interpret events that transpired months before the shooting as 'immediately preceding conduct'").

At bottom, Plaintiffs are confusing the two analytical frameworks. *Timberwalk* applies when "the premises owner has no direct knowledge that criminal conduct is imminent, but the owner may nevertheless have a duty to protect invitees because past criminal conduct made similar conduct in the future foreseeable."  *Del Lago*, 307 S.W.3d at 768.  That is the standard the amended complaint attempts to

14

satisfy—citing prior incidents to show that Smith's conduct was foreseeable and thus Affordable Care had a duty to protect the dentists from him.  The complaint failed to satisfy that standard, which Plaintiffs acknowledge, as explained above.  *Del Lago*, in contrast, applies when the premises owner "had actual and direct knowledge" that a crime by a third party was "imminent," had "ample time and means to defuse the situation," and failed to do so.  *Id.* at 769.  That latter scenario is not this case, at least as the Plaintiffs have alleged it.

## IV.

Plaintiffs fail to allege that Smith's violent crime was foreseeable under either *Timberwalk* or *Del Lago*.  Accordingly, Plaintiffs have not alleged a duty owed by Affordable Care to prevent violent crime, an element of all claims asserted by Plaintiffs, and thus, Plaintiffs have failed to state a claim.  For the foregoing reasons, the Court **GRANTS** Affordable Care's Motion to Dismiss First Amended Complaint (Docket No. 34) and **DISMISSES WITH PREJUDICE** Plaintiffs' negligence, premises liability, gross negligence, and negligent undertaking claims for failure to state a claim.

So **ORDERED** and **SIGNED** this **10th** day of  **June, 2024.**

JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE

15